In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00357-CV**
_____

**IN RE COMMITMENT OF RONNIE RAY BROOKS**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-11-11615 CV**

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Ronnie Ray Brooks as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2013). A jury found that Brooks is a sexually violent predator and the trial court rendered a final judgment and an order of civil commitment. In two appellate issues, Brooks challenges the admission of certain evidence and the factual sufficiency of the evidence. We affirm the trial court's judgment.

Admission of Evidence

In issue one, Brooks complains of testimony that the State elicited from Dr. Michael Arambula regarding the details of Brooks's charged and uncharged sexual

1

offenses. Brooks argues that admission of this evidence violated Rules of Evidence 403 and 705. However, Brooks either wholly failed to object to the complained-of testimony or failed to object on the basis of Rules 403 and 705. Accordingly, issue one is not preserved for appellate review. *See* Tex. R. Evid. 103(a)(1); *see also* Tex. R. App. P. 33.1(a); *In re Commitment of Day*, 342 S.W.3d 193, 197 (Tex. App.—Beaumont 2011, pet. denied).

Factual Sufficiency

In issue two, Brooks contends that the evidence is factually insufficient to support the jury's verdict. Under factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Day*, 342 S.W.3d at 213. In an SVP case, the State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id*. § 841.003(a) (West Supp. 2013). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the

2

person becomes a menace to the health and safety of another person." *Id*. § 841.002(2) (West Supp. 2013).

The jury heard evidence regarding Brooks's criminal history, including his sexual offenses. Brooks admitted having been convicted of aggravated rape, robbery by threats, false claims against the government, failure to identify, and sexual assault. In his responses to requests for admissions, Brooks admitted that he does not believe that he is a sex offender or needs sex offender treatment and that he believes his victims are to blame for his sexual offenses. During his testimony, Brooks admitted losing control of his sexual urges in the past, and he testified that although he has changed, he still needs sex offender treatment.

Dr. Arambula testified that Brooks suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Arambula diagnosed Brooks with sexual deviance, mood disorder not otherwise specified, psychotic disorder not otherwise specified, polysubstance dependence by history, and antisocial personality disorder. He testified that Brooks's sexual deviance is a chronic condition and is a "bad cocktail" when combined with a mental illness and antisocial personality disorder. Arambula explained that Brooks has the following risk factors: sexual deviance, antisocial personality, use of physical force,

humiliation, offending while on supervision, failure to accept responsibility, callousness, substance abuse, and treatment failure.

Dr. John Tennison testified that Brooks does not have a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. He testified that Brooks's substance abuse appears to be in remission, he would not have diagnosed Brooks with psychotic or mood disorders, he did not believe that Brooks's antisocial behavior rose to the level of an actual disorder, the evidence does not support a diagnosis of sexual sadism, and sexual paraphilias tend to decrease in manifestation as a person ages. Tennison conducted the Static-99R actuarial test and Brooks's score fell within a zero to seven percent rate of recidivism.

According to Brooks, Dr. Arambula's testimony was based on "incorrect legal standards[.]"[1] Arambula testified that "likely" is "not just a mere possibility, that something probably will occur." Brooks argues that this testimony "does not resemble the U.S. Supreme Court's assertion that involuntary civil commitment is limited to those who are 'dangerous beyond their control.'" This Court has found

---

[1]In his motion for new trial, Brooks challenged the factual sufficiency of the evidence on grounds that the State failed to proffer sufficient reliable evidence that Brooks had a behavioral abnormality that made him likely to engage in a predatory act of sexual violence. We construe this argument to include that presented on appeal. *See* Tex. R. Civ. P. 324(b)(2).

4

that expert testimony defining "likely" as "probable" and "beyond a mere possibility" is "consistent with how dictionaries commonly define that term and with the *Bohannan* Court's construction of the statute[.]" *In re Commitment of Weatherread*, No. 09-11-00269-CV, 2012 Tex. App. LEXIS 9757, at **8-10 (Tex. App.—Beaumont Nov. 29, 2012, pet. denied) (mem. op.).

Brooks also complains of Arambula's description of emotional or volitional capacity:

> Arambula: [I]t's basically how the illness affects the brain and what it does. So sometimes people have a -- because of their limbic system, their emotional -- the emotional part of their brain is so charged that they can't control themselves, that's how I look at that. And the volitional part means, basically, decision-making, and, you know, should I do it, do you think I -- can I get away with it? That's a person, should I do that anyway to a person? All of those things are involved in brain function. And when an illness like this exists, it interferes with that normal functioning.
>
> State: Okay. And is there evidence that we've discussed that Mr. Brooks's emotional or volitional capacity has been affected?
>
> Arambula: I think the offenses speak for themselves, because in medicine, we study pathology, so, in other words, we study how a disease behaves. So if I study how a disease behaves, in this case, the inference, the reverse inference is that when someone is normal, that they don't do that.
> . . .
> Arambula: So only a person that's diseased would do what Mr. Brooks did.

5

> State: Is it your understanding that if a person has a behavioral abnormality, as we've just discussed, that they automatically are likely to engage in a predatory act of sexual violence?
>
> Arambula: [I]t's a definition and everything is included. So it's all together.

Brooks contends that "Arambula's belief that a person who knows the consequences of a certain behavior but engages in that behavior anyway is volitionally impaired does not comport with the U.S. Supreme Court's holding that involuntary civil committees must have 'serious difficulty in controlling [their] behavior.'" Whether a person suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence is a single, unified issue. *In re Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012). Thus, whether a person suffers from an emotional or volitional defect so grave as to cause behavior that makes him a menace is included in the determination of whether he has serious difficulty in controlling behavior. *In re Commitment of Almaguer*, 117 S.W.3d 500, 505-06 (Tex. App.—Beaumont 2003, pet. denied). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *Id*. Arambula's testimony is not contrary to these rulings. The jury could infer serious difficulty controlling behavior based not only on Arambula's testimony, but also on Brooks's

6

past behavior and Brooks's own testimony. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at \*13 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.); *see also In re Commitment of Grinstead,* No. 09-07-00412-CV, 2009 Tex. App. LEXIS 228, at \*20 (Tex. App.—Beaumont Jan. 15, 2009, no pet.) (mem. op.).

As sole judge of the weight and credibility of the evidence, the jury could reasonably conclude that Brooks suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Bernard*, No. 09-10-00462-CV, 2012 Tex. App. LEXIS 4681, at \*\*6-7 (Tex. App.—Beaumont June 14, 2012, pet. denied) (mem. op.); *see also Almaguer*, 117 S.W.3d at 505-506; *Burnett*, 2009 Tex. App. LEXIS 9930, at \*13; *Grinstead*, 2009 Tex. App. LEXIS 228, at \*16; *In re Commitment of Mullens,* 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied). That Brooks has serious difficulty controlling his behavior and is likely to commit predatory acts of sexual violence directed toward individuals for the primary purpose of victimization are implicit in this finding. *See In re Commitment of Bailey*, No. 09-09-00353-CV, 2010 Tex. App. LEXIS 6685, at \*\*12-14 (Tex. App.—Beaumont Aug. 19, 2010, no pet.) (mem. op.); *see also Grinstead*, 2009 Tex. App. LEXIS 228, at \*16. Weighing all of the evidence, the verdict does not reflect a risk of injustice that would compel

ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

                        _____

                           STEVE McKEITHEN
                              Chief Justice

Submitted on March 3, 2014
Opinion Delivered March 13, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.