**AFFIRMED and Opinion Filed July 3, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00797-CV**

**IN RE: THE COMMITMENT OF GREGG BERNARD PENDLETON,**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV21-70010**

## MEMORANDUM OPINION

Before Justices Reichek, Goldstein, and Garcia
Opinion by Justice Goldstein

A jury found that Gregg Bernard Pendleton is a sexually violent predator, and the trial court entered judgment civilly committing him pursuant to Texas Health and Safety Code Chapter 841. In his sole issue, Pendleton argues:

> Under Texas Supreme Court case law, the "behavioral abnormality" element of the State's case is conclusively established as a matter of law once the State proves the "repeat sexually violent offender" element of its case such that there are no meritorious issues that can be raised on appeal that would result in reversible error when personal and subject-matter jurisdiction are also established.

Pendleton generally "prays that this Court grant him any and all relief that the facts and the law require and any other relief that this Court may deem appropriate." Pendleton more explicitly requests

> that this Court hand down an opinion deciding that this appeal cannot present reversible error based on the Texas Supreme Court's decision in *Stoddard* that Chapter 841's "behavioral abnormality" issue requires the State to prove only a "likelihood" of reoffending. *See* Tex. R. App. P. 38.1(j) (prayer in appellant's brief "must contain a short conclusion that clearly states the nature of the relief sought").[1]

We discern from the issue presented, the text of the argument, and the prayer for relief that Pendleton, as noted by the State "complains of the effects of Texas Supreme Court's *Stoddard*[2] decision." We decline the State's invitation to find waiver when the factual and legal sufficiency of the evidence that forms the basis of this legal effects challenge was before the trial court in the motion for new trial. We additionally decline Pendleton's invitation to decide "that this appeal cannot present reversible error based upon *Stoddard*" because the issue is one for the Texas Supreme Court or the Texas legislature to decide. However, we further discern that to address Pendleton's challenge necessitates a review of the legal and factual sufficiency of the evidence as raised in his motion for new trial.

---

[1] We note that this is substantially the same issue and prayer that this court addressed in *In re Green*, No. 05-23-00472-CV 2024 WL 1853378 (Tex. App.—Dallas April 29, 2024).

[2] *In re Commitment of Stoddard*, 619 S.W.3d 665, 675 (Tex. 2020).

–2–

We are constrained to follow *Stoddard*, as well as prior opinions of this court[3]; therefore, we affirm the trial court's judgment. Because all dispositive issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2(a), 47.4.

## BACKGROUND

Pendleton was convicted and incarcerated for the 1997 felony offense of Indecency with a Child by Contact, committed when Pendleton was twenty-four years old, and the 2003 felony offense of Aggravated Sexual Assault of a Child under 14 committed when Pendleton was thirty-one, for which he was still serving time during the civil commitment proceedings.

In November 2021, the State filed a petition alleging Pendleton is a sexually violent predator suffering from a behavioral abnormality and requested that he be committed for treatment and supervision pursuant to Title 11, Chapter 841, of the Texas Health and Safety Code. The petition further alleged that Pendleton is pending entry into the TDCJ Sex Offender Treatment Program, which could result in his release on parole prior to his sentence's discharge date of December 22, 2028. The three-day civil commitment jury trial was held in March 2023. At the time of trial, Pendleton was fifty years old.

---

[3] *See In re Daugherty,* No. 05-23-00334-CV, 2024 WL 1089478 (Tex. App.—Dallas March 15, 2024, no pet.) (mem. op.); *see also In re Commitment of Pero*, No. 05-21-01141-CV, 2023 WL 3881111, at *1 (Tex. App.—Dallas June 8, 2023, no pet.) (mem. op.). We may not overrule a prior panel decision of this Court absent an intervening change in the law by the legislature, a higher court, or this Court sitting en banc. *See MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.)

–3–

At trial, the State and Pendleton presented expert testimony relative to behavioral abnormality. The State called Dr. Christine Reed, Ph. D., and Pendleton to testify. The defense called Dr. Marisa Mauro, Psy. D. to testify. The experts' curricula vitae reflecting their education, training, and experience and evidence of Pendleton's two felony convictions were admitted into evidence. Dr. Reed, a clinical psychologist, testified regarding her education and experience in forensic psychology practice and risk assessments, specifically evaluations of behavioral abnormality. She applies "what [she] know[s] about psychology, to the legal question as to whether he has a behavioral abnormality." Dr. Reed evaluated Pendleton to assess whether he had a behavioral abnormality and testified as to her evaluation of him. She testified that, as part of her evaluation and before meeting Pendleton, she reviewed his offense records, prison records about disciplinary issues, and records from his participation in the sex offender treatment program. Dr. Reed met with Pendleton via video conferencing for approximately three and one half hours. The interview covered Pendleton's history, background, mental health, criminal history, treatment and "how they're doing now." After meeting with him, she also received and reviewed transcripts of Pendleton's and Dr. Mauro's depositions that were taken as part of the case. Dr. Reed testified that she found Pendleton has a behavioral abnormality that makes him likely to commit predatory acts of sexual violence.

Dr. Mauro, a licensed psychologist, testified about her training, education, and experience, including her experience as a sex offender treatment provider. She conducts assessments "for general, intellectual disability, general diagnosis of a mental illness[,] and [s]ex offense risk assessment in preparation for trial or for plea bargain purposes." Dr. Mauro has been working on behavior abnormality cases "since 2011" and testified for the defense as to her opinion as to whether Pendleton "has a behavioral abnormality today." She acknowledged that it is not possible to determine whether Pendleton is "100 percent sure not to reoffend."

Dr. Mauro has testified in approximately seventy civil commitment trials. She has conducted over three hundred evaluations and was retained by the state counsel for offenders, civil defense section, private defense attorneys, and by court appointment. The majority of the time – approximately seventy percent – she has found that someone "has a behavioral abnormality." She has never done a behavioral abnormality assessment or testified on behalf of the special prosecution unit. Dr. Mauro acknowledged that the term "likely," though undefined in the statute, is synonymous with "probable" in the context of the statute's provision "that a person with a behavior abnormality, will be likely to engage in a predatory act of sexual violence."

Similar to Dr. Reed, Dr. Mauro's methodology to arrive at her opinion involved reviewing the records, conducting a clinical interview with Pendleton, completing risk assessment instruments, the Static-99R applying "actual actuarial

methods for potential recidivism," the Static-2002R, and a PCL-R. She uses a "Clinical Actuarial Adjusted Approach" to look "at factors known to be associated with risk recidivism, not included on the actuarial instrument" and forms an ultimate opinion. She interviewed Pendleton for just over three hours, discussing his adjustment to prison, early childhood, legal history, personality issues, and the sexual offenses in detail. After reviewing the records, interviewing Pendleton, and scoring the tests, Dr. Mauro formed an opinion that Pendleton does not have a behavior abnormality as he sits today.

At the conclusion of all the evidence, the parties having rested and closed, Pendleton moved for a directed verdict that the State failed to produce evidence that Pendleton "suffers from serious lack of controlling behavior . . . in order to determine behavior abnormality." The trial court denied the directed verdict.[4]

The jury unanimously found beyond a reasonable doubt that Pendleton is a sexually violent predator as defined in the charge.[5] The trial court entered judgment

---

[4] The court noted "you have your issue." As no point of error was raised on this issue, we do not address it.

[5] The jury charge defined the critical terms at issue here as follows:

"SEXUALLY VIOLENT PREDATOR"

A person is a sexually violent predator for the purposes of Chapter 841 of the Texas Health and Safety Code if the person:

(1) Is a repeat sexually violent offender; and

(2) Suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence.

in accordance with the jury's finding and ordered Pendleton civilly committed in accordance with Section 841.081 of the Texas Health and Safety Code for treatment and supervision to commence upon his release from prison.

Pendleton filed a motion for new trial, asserting the trial court erred by allowing the Petitioner's 1) improper comments in voir dire, in violation of the motion in limine, contending the statements would inform the jury of the effect of the answer to the question in the charge and 2) presenting expert testimony containing hearsay information that was substantially outweighed by any probative value. Pendleton averred that the evidence was legally and factually insufficient to support the jury's finding beyond a reasonable doubt that Pendleton:

> suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence as required by Section 841.003 (a)(2) of the Texas Health and Safety Code. Predatory act is defined as "an act directed toward individuals, including family members, for the primary purpose of victimization. TEX. HEALTH & SAFETY C. 841.002(5).
>
> \* \* \*
>
> has serious difficulty controlling his behavior, which is a constitutional prerequisite to involuntary civil commitment.
>
> \* \* \*

---

"BEHAVIORAL ABNORMALITY" means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person.

is currently a menace to the health and safety of another person.

\* \* \*

is a sexually violent predator who is not amenable to traditional treatment modalities.

This appeal followed.

## STANDARD OF REVIEW

In reviewing legal sufficiency in sexually violent predator cases, we use the familiar criminal law standard: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Stoddard*, 619 S.W.3d at 675 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In reviewing factual sufficiency, our standard of review is "whether, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *Id.* at 678. In applying that standard, we "must detail why we conclude a reasonable factfinder could not have credited disputed evidence in favor of the finding." *Id.*

Section 841.003 provides two elements that the State must prove beyond a reasonable doubt for a factfinder to conclude that a person is a sexually violent

predator (SVP). TEX. HEALTH & SAFETY CODE § 841.003(a); *Stoddard*, 619 S.W.3d at 669. A person is an SVP if the person:

> (1) is a repeat sexually violent offender; and
> (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence."

TEX. HEALTH & SAFETY CODE § 841.003(a). The statute defines a "repeat sexually violent offender" as a person who is convicted of "more than one sexually violent offense and a sentence is imposed for at least one of the offenses." *Id.* § 841.003(b). A "behavioral abnormality" is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2).

The supreme court in *In re Commitment of Bohannan*, 388 S.W.3d 296 (Tex. 2012), clarified that "[t]he condition and predisposition" part of the definition "are one and the same," and the import of "predisposition," as found in the definition, and the likelihood that a person will "engage in a predatory act of sexual violence," as found in the element, is the same: increased risk. *Id.* at 302–03. The court further clarified that "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *Id*. (emphasis added).

## DISCUSSION

Pendleton does not dispute "that the State proved the 'repeat sexually violent offender' element of its case as a matter of law." He thereafter outlines his argument that his civil commitment is a fait accompli under *Stoddard* and *Bohannan.* Positing under *Stoddard* that the "behavioral abnormality" element is "a present condition that creates a likelihood of [sexually violent] conduct in the future," *Stoddard*, 619 S.W.3d at 677–78, the State has only to establish as a "single, unified issue" that the "behavioral abnormality" element is a "likelihood" of sexually reoffending. *See Bohannan*, 388 S.W.3d at 302–03; *see also* TEX. HEALTH & SAFETY CODE § 841.003(a)(2).

Citing to expert testimony in the record that it would be impossible "to determine that Mr. Pendleton is 100 percent sure not to reoffend," Pendleton contends that a "repeat sexually violent offender" "always has at least some 'likelihood' of sexually reoffending." Pendleton concludes that "the State would be entitled to a directed verdict on this element [repeat sexually violent offender] and on Section 841.003(a)(2)'s 'behavioral abnormality' element of its case." Therefore, Pendleton posits that "[u]nder these circumstances, any non-jurisdictional error occurring at trial will always be harmless (and, therefore, cannot have 'probably caused the rendition of an improper judgment')." In other words, once Pendleton was determined to be a repeat sexually violent offender, under the statute and applicable jurisprudence, the outcome is unavoidable: civil commitment.

The State responds that Pendleton did not challenge the effects of the *Stoddard* decision in the trial court and therefore the issue was waived and not preserved on appeal.[6] The State requests that we deny Pendleton's sole issue and affirm the judgment of the trial court.

---

[6] Outside the presence of the jury, defense counsel endeavored to present evidence through Dr. Mauro concerning treatment of those persons who are civilly committed and argued this evidence was relevant as to whether Pendleton is a sexually violent predator. The trial court instructed counsel "don't go into what goes on at the pseudo-prison." Defense counsel made an offer of proof as to what has been described as a "supervised treatment facility that houses civilly committed, sexually violent predators." Dr. Mauro, who personally visited the facility, testified about her observations of the treatment compared to community-based programs. She described it as a "prison" with "raised wire around the fence and gates and locks that control people and all of that." She testified that the last time she did an evaluation there, "the treatment provided is no more intensive than what they get in the community. So you get groups, you know, one or twice a week; usually once a week and then an individual session about once a month. I do know they have had a great deal of difficulty staffing it, because it's in the middle of nowhere. And that has – I think that's had implications to the treatment they've been able to provide." If not civilly committed, Pendleton would be on parole for a length of time with either "Intensive Supervision" in the community or "Regular Supervision." Dr. Mauro testified that Pendleton "would likely be assigned to a Sex Offender Supervision caseload, which requires treatment with a SOTP [Sex Offender Treatment Provider], approved by parole and probation, out in the community… it's usually weekly group treatments, and then once a month, every other month, individual therapy.. [a]nd a parole officer that is used to monitor sex offender caseload." Mandatory sex offender treatment is required. Clinical polygraphs are done every year or every two years, and non-compliance can be a revocation issue. The trial court ruled that it would allow counsel to "talk about parole" . . . "recognizing that some people simply can't send anyone to a secure facility." However, the trial court distinguished talking about parole from talking about "pseudo-prison":

> So that's a far cry from giving a blow-by-blow description of how horrible this place is, which is what the State doesn't want, which is a little legally disingenuous – but there's nothing I can do about that, because the case law says, you're not allowed to. But it's – you can take that up on appeal. Make that an issue. Say "we should be able to tell all about this and that the State's hiding the ball." But the law says, you can't. So there you go. Certified for appeal. You can talk about parole, but you can't talk about pseudo-prison.

As this has not been raised as an issue, we simply note the offer of proof without further discussion.

The facts of the prior convictions are not disputed[7], nor are the qualifications, training, education, or similar methodology utilized by the experts challenged. The jury heard the testimony and the ultimate opinions of those experts. We have considered Pendleton's challenge as to the sufficiency of the evidence and reviewed all evidence in the record. After reviewing the evidence in the light most favorable to the factfinder, we conclude a rational factfinder could have found Pendleton has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence beyond a reasonable doubt. *See In re Commitment of Hill,* 621 S.W.3d 336, 344 (Tex. App—Dallas 2021, no pet.). Additionally, in light of the entire record, we conclude "the disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict," is not "so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *See Stoddard*, 619 S.W.3d at 675. Unless and until there is a statutory or jurisprudential change, we are constrained to follow *Stoddard* and the statutory construct of Chapter 841 relative to civil commitments.

---

[7] We note without further discussion that Pendleton continues to deny the underlying facts establishing the elements of the offenses for which he was convicted.

We affirm the trial court's judgment and order of commitment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

230797F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

IN RE: THE COMMITMENT OF
GREGG BERNARD PENDLETON,
Appellant

No. 05-23-00797-CV     V.

On Appeal from the 203rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. CV21-70010.
Opinion delivered by Justice
Goldstein. Justices Reichek and
Garcia participating.

, Appellee

In accordance with this Court's opinion of this date, the judgment of the trial court and order of commitment are **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered July 3, 2024.