

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00216-CV

_____

**IN RE: THE COMMITMENT OF JARROD OWENSBY**

On Appeal from the 181st District Court
Potter County, Texas
Trial Court No. 111684-B-CV, Honorable Titiana Frausto, Presiding

October 22, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

A jury found appellant, Jarrod Owensby, to be a "sexually violent predator" under chapter 841 of the Health and Safety Code, that is, the Texas Civil Commitment of Sexually Violent Predators Act. That resulted in the trial court's ordering his commitment to a residential facility for sex offender treatment upon his release from prison for his latest sexual offense. By a single issue, Owensby argues the evidence was insufficient to support the finding. Allegedly, the expert witness proffered by the State only provided conclusory, unreliable, and illogical opinions upon which the jury could not rely as evidence. We affirm.

### Background

Having been twice convicted for violent sexual offenses, Owensby approached the end of his 13-year sentence for the latest sexually based crime. As he did, the State petitioned for his civil commitment as a sexually violent predator. Allegedly, he suffered from a behavioral abnormality that made him likely to engage in a predatory act of sexual violence.

Two witnesses testified at the ensuing trial, Owensby and the forensic psychologist Dr. Jason Dunham. The jury heard from those witnesses of the numerous instances of sexual depravity in which Owensby engaged over his 50 plus years of age and multiple (two) expert opinions deeming him as suffering from a behavioral abnormality. Thereafter, the jury found the existence of the elements necessary to result in Owensby's commitment, which finding the trial court memorialized in the final judgment under attack here.

### Analysis

Through his sole issue, Owensby contends Dunham provided only nonsensical and conclusory testimony to support his opinions. Thus, the evidence was insufficient to support the jury's finding. We overrule the issue.

The pertinent standard of review is set forth in *In re Commitment of Stoddard*, 619 S.W.3d 665, 674-75 (Tex. 2020) and *In re Commitment of Delacruz*, No. 03-19-00420-CV, 2020 Tex. App. LEXIS 10576, at *3-4 (Tex. App.—Austin Apr. 8, 2021, pet. denied) (mem. op.). We apply it here.

Regarding the particular argument of Owensby, conclusory opinions are no evidence. *Windrum v. Kareh*, 581 S.W.3d 761, 770 (Tex. 2019). Thus, they cannot support a jury finding or ensuing judgment. *Id.* Furthermore, a conclusory expert opinion

differs from one that is unreliable or inadmissible. *Id.* It can be the subject of a "no-evidence" challenge on appeal without first objecting to it at trial. *Id.* Yet, the line determining whether an expert opinion is conclusory is difficult to draw, and "[c]lose calls must go to the trial court." *Id.* (quoting *Larson v. Downing*, 197 S.W.3d 303 (Tex. 2006) (per curiam)). Generally, the expert must explain the basis for his opinion and link it to facts. *Id.* at 768. Or, as our Supreme Court said, an expert's opinion is "conclusory when: (1) he asks the jury to take his word that his opinion is correct but offers no basis for his opinion or the bases offered do not actually support the opinion; or (2) he offers only his word that the bases offered to support his opinion actually exist or support his opinion." *Id.* at 769. The expert's experience alone may provide some of the requisite basis and proffering medical or academic literature is not always necessary. *Id.*

Finally, the legislature, under the Act, provided for the involuntary "long-term supervision and treatment of sexually violent predators." TEX. HEALTH & SAFETY CODE ANN. § 841.001. Establishing one is such a predator entails proof 1) the person is a "repeat sexually violent offender" who 2) "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* at § 841.003(a). "Behavioral abnormality" is a condition that predisposes sexually violent conduct. *In re Bohannan*, 388 S.W.3d 296, 302-303 (Tex. 2012). That is, "predisposes" qualifies and describes the "condition." *Id.* "The required condition *is* the predisposition." *Id.* (emphasis in original). They are one and the same. *Id.* In other words, the requisite abnormality consists of a predisposition to commit sexually violent offenses to the extent that the person becomes a menace to the health and safety of another person. *Id*. at 303. That said, we turn to the record at bar.

3

The State proved Owensby to be a repeat sexual offender. His convictions for indecency with a child and sexual assault of a 15-year-old establish as much.

Next, the record contains evidence of an expert (Dunham) testifying about Owensby's behavioral abnormality. The qualifications of the expert consisted of: 1) a bachelor's degree in psychology, 2) a master's degree in clinical psychology, 3) a Ph.D. in counseling psychology, 4) a one-year predoctoral internship in forensic psychology (a field encompassing the topic of behavioral abnormalities), 5) a one-year postdoctoral fellowship in adult criminal forensic psychology, 6) a 24-year practice in forensic psychology, 7) conducting "sex offender risk assessment evaluation[s]" for that 24 years, 8) conducting "behavioral abnormalities" evaluations of the ilk required under the Act since 2005, 9) performing 323 of such behavioral abnormality evaluations, 10) conducting such evaluations for the State, State Counsel for Offenders, Texas Department of Criminal Justice, and Texas Civil Commitment Office, and 11) testifying in trial, for "purposes of a behavioral abnormality assessment," approximately 175 times.[1] Not only does this provide foundation to deem him an expert in the field of the type of behavioral abnormalities encompassed by this proceeding but also supplies some basis underlying his opinions regarding same. But there is more.

In evaluating Owensby, Dunham reviewed reports from at least one other expert who opined that Owensby suffered from the requisite behavioral abnormality.[2] Such was

_____

[1] According to the record, the very same expert whose opinions are under attack as "conclusory," "defy[ing] common sense," "illogical," and "unreliable" is the very same expert counsel for Owensby (i.e. State Counsel for Offenders) often hires in matters such as these. That seems rather ironic, and itself tends to detract from the acceptability of Owensby's position at bar.

[2] Owensby does not here assail the opinion of this other expert, which the jury was free to weigh in its deliberations.

4

a common practice in the field, according to Dunham.  So too did he compare the information garnered during his own evaluation with that relied upon by the other expert to see how they matched.  The information compared included "documents, lots of documents, lots of records and files, doing an evaluation face-to-face, talking to the person, [and] doing testing."[3]  The data obtained was historical in nature and covered Owensby's entire life.  So covering his lifespan afforded a broader basis upon which to form an opinion.  Added to that was application of risk factors, protective factors, and diagnoses personally developed by Dunham.  Also guiding his evaluation were recognized principles in the field of forensic psychology.  Other experts performing like forensic evaluations also used the same methodology, according to him.

As indicated above, Owensby also underwent psychological testing.  Those tests consisted of a Static-99R test, which is a risk assessment tool, and the PCLR test, which measures an individual's level of psychopathy.

And, within the historical information considered by Dunham one encountered specific information about the nature of Owensby's criminal conduct.  His first conviction emanated from the rape of a seven-year-old girl; Owensby apparently gave her slightly older brother pornography to review while he committed the crime.  That resulted in his conviction for indecency with a child by contact, a prison sentence of 20 years, sexual offender treatment while imprisoned, multiple paroles before completing the sentence, and multiple revocations of same for violating the conditions of parole.

---

[3] The expert described a portion of the documents reviewed while evaluating Owensby as police reports, court judgments, victim statements, witness statements, deposition transcripts of Mr. Owensby, prison records which include sex offender treatment records, medical records, disciplinary write-ups, and education records.

5

The State again convicted him at the age of 44. Underlying this incident was his rape of a 16-year-old boy whom he encountered in Bible studies. One of the rather fantastical descriptions of the crime uttered by Owensby consisted of his being made to rape the minor at gun point by a third-party. Upon completion of the act, someone then supposedly injected Owensby with heroin. Yet, this tale was not told to the police. And eventually Owensby would simply admit to forcibly raping the youth in his (Owensby's) truck. This act led to a multi-year prison term nearing completion at the time the State sought to have him adjudicated a sexually violent predator.

Another criminal offense committed while on parole consisted of Owensby's entering a neighboring house at night without permission and while a mother and child slept on the couch. Apparently, he carried the child to a bedroom, returned to the couch, and stood over the mother. She awoke, and her screams caused him to flee. The expert also encountered evidence of Owensby's admitting to having at least 80 sexual partners, his having a sex drive of between seven and eight on a scale of ten, his having engaged in fights within prison, and his having received at least 70 disciplinary write-ups while incarcerated, 20 of which involved acts of public masturbation.

The foregoing led Dunham to opine that Owensby suffered from a behavioral abnormality making him likely to engage in a predatory act of sexual violence. Underlying that opinion were others pertaining to Owensby's sexual deviance, recidivism after treatment, antisocial orientation, pattern of behavior, lack of impulse control, and refusal to accept complete responsibility for his crimes. The expert both related the facts supporting these sub-opinions and explained the reasons for their relevance to the ultimate determination about Owensby's being predisposed to engaging in other sexually violent acts endangering others. Owensby did it before. He did it again. He did it after

6

completing sexual offender treatment. He did it after being incarcerated for engaging in criminally sexual acts. He did it apparently knowing it could return him to prison. He did it to a very young girl. He did it to an older male youth thereby expanding his target pool. He did it behind doors. He did it in public. He gained opportunity through criminal trespass to do it to an adult female before being scared away. He had no hesitance to engage in criminal activity both of a sexual and non-sexual nature. He had no hesitance to masturbate in front of others while in or out of prison.

In short, courts have long recognized that past is prologue. *See Carson v. Carson*, No. 07-16-00311-CV, 2017 Tex. App. LEXIS 9238, at *8 (Tex. App.—Amarillo Sept. 29, 2017, no pet.) (mem. op.) (citing *In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.)). The foregoing circumstances illustrating Owensby to be an antisocial sexual deviant unhindered by laws, impulse control, and societal norms for the better part of his life underlay Dunham's opinion casting Owensby as predisposed to engaging in sexual acts endangering others. These circumstances not only served to shield that opinion against attack as conclusory but also illustrate that the jury characterizing Owensby as a violent sexual predator had the support of both legally and factually sufficient evidence.

We overrule his sole issue and affirm the trial court's judgment.


Brian Quinn
Chief Justice


7