**Affirmed; Opinion Filed October 16, 2019.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-01202-CV**

### IN RE THE COMMITMENT OF STEVEN EDWARD MENDOZA

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV-17-70003**

# MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Carlyle

A jury found appellant Steven Edward Mendoza is a sexually violent predator as defined

in the Texas Civil Commitment of Sexually Violent Predators Act (the Act). *See* TEX. HEALTH &

SAFETY CODE §§ 841.001–.151. The trial court rendered judgment on the jury's verdict and

ordered him civilly committed for treatment and supervision under the Act. In five issues on

appeal, Mendoza contends the evidence is legally and factually insufficient to support the jury's

sexually violent predator finding and the trial court erred by admitting hearsay testimony into

evidence and disallowing certain other trial testimony. We affirm the trial court's judgment in this

memorandum opinion. *See* TEX. R. APP. P. 47.4.

### I. Background

In August 2017, the State of Texas filed a petition alleging Mendoza (1) meets the Act's

definition of sexually violent predator, i.e., "a repeat sexually violent offender who suffers from a

behavioral abnormality that makes him likely to engage in a predatory act of sexual violence," and (2) therefore should be civilly committed under the Act. At that time, Mendoza was serving a ten-year prison sentence for two sexually violent offenses he committed on the same evening and to which he had pleaded guilty. He was scheduled for release from prison on or before May 4, 2019.

At the April 2018 trial in this case, Mendoza testified that after graduating high school in 2005, he lived at his father's home in Dallas. He was employed for several short periods, but "just walked off" those jobs because he preferred to "stay at home and chill." He regularly "borrowed" money from his grandmother and used that money to buy marijuana, which he smoked daily, and cocaine, which he used on weekends.

The two offenses for which Mendoza was convicted occurred on a Saturday in 2009. That morning, he drank alcohol and smoked marijuana. In the evening, he attended a barbeque at his cousin Leticia's home, where he used cocaine, drank more alcohol, and smoked more marijuana. Near the end of the barbeque, the only guests still awake were Mendoza, a male cousin, and a neighbor's wife. The three of them talked and drank in the dining room, which was adjacent to the living room. Two of Leticia's daughters, ages eleven and eight, were asleep on the living room sofa.

Mendoza testified he was "feeling drunk" and "started feeling on the neighbor's wife," who then left. Mendoza and his male cousin went into the living room, where the cousin fell asleep on the floor. Mendoza stated he was "feeling aroused" and his plan "was to like take care of my arousal." He approached Leticia's sleeping eleven-year-old daughter, removed her panties, then took off his pants and underwear and began "to try to penetrate her." The eleven-year-old awoke when he started removing her panties and he "saw fear in her face" but "didn't stop." As Mendoza attempted to penetrate her, she pushed him away, screamed, and ran to her room. Mendoza testified:

Q. She ran to her room. Okay. What did you think about that when you saw her do that?

A. Well, I wasn't satisfied because I didn't get—I didn't accomplish what I was trying to get accomplished.

Q. And nothing in that moment said, "Oh, my God, what have I done? Let me go— If I'm horny just go masturbate"? Nothing said that to you?

A. No, ma'am.

Q. So what did you do?

A. I went to her sister.

Mendoza stated he took off the eight-year-old's pants and "was gonna do the same thing," but she "got up and ran to her room." At that point, Mendoza "just decided to just forget about it" and fell asleep on the sofa.

The next morning, Leticia confronted Mendoza about what happened and her brother-in-law threatened him. Mendoza "took off" and "went into hiding." About a month later, he turned himself in to police at his family's request. Initially, Mendoza told police Leticia's brother-in-law had committed the assaults, but "[the police] had all the facts so, you know, I just went ahead and confessed." He pleaded guilty to one count of aggravated sexual assault of a child under fourteen and one count of attempted aggravated sexual assault of a child under fourteen.

Approximately two years into his ten-year prison sentence, Mendoza "caught a Code 20," which meant he was disciplined for exposing himself in a public setting. As a result, he was "locked down like 23 hours a day." About three years later, he was caught tampering with a lock and his restriction was increased to "closed custody," which meant he was "locked down 24 hours a day." While in closed custody, Mendoza committed at least seventy additional Code 20 violations by exposing himself to female prison guards. He stated (1) he used a contraband "peep mirror" obtained from another inmate to see when female guards "were coming down the run" so

he could masturbate and expose himself to them, and (2) this was called "the jack game" and was something other inmates told him about after he began serving his sentence.

Mendoza testified he knows he "needs treatment." He stated he (1) "just can't stop" exposing himself to women and (2) has "an anger or temper problem" that "causes me to explode." His plan upon release from prison was to stay with his sister, but he had no plans regarding treatment or employment.

On cross-examination, Mendoza stated (1) the assaults on Leticia's daughters would not have happened if he had been sober; (2) he realizes his behavior "traumatized them" and "messed up" their lives; and (3) he prefers "to have sex with a person that's, you know, around my age or older" and does not want to have sex with children. On redirect examination, he stated that in a February 2018 deposition in this case, he testified the assaults on Leticia's daughters were "an impulse."

Dr. Randall Price, a board-certified forensic psychologist, testified the State retained him to conduct a behavioral abnormality evaluation of Mendoza. Price has performed approximately 175 to 200 such evaluations. He interviews the subject face-to-face and reviews all available records, including previous behavioral abnormality evaluations. Then, he completes "actuarial instruments," arrives at a diagnosis, identifies "what the risk factors are and what the protective factors are," and determines whether the subject has a behavioral abnormality.

Price stated the Act defines behavioral abnormality as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity predisposes that person to commit a sexually violent offense to the extent that the person becomes a problem for the public." Further, he testified:

Q. . . . How would you describe—define predatory offense?

A. If it's predatory, it means the person is seeking to exploit or injure another person for their pleasure, profit or gain in some way.

Q. So to victimize someone?

A. It involves creating a victim that they offend against.

Q. You mentioned the Health and Safety Code. Is that where you derive your definitions from of behavioral abnormality?

A. Yes.

Price stated he has "never seen a file with this many Code 20s in it." He diagnosed Mendoza with (1) a substance abuse disorder that was "in partial remission secondary to a controlled environment"; (2) "exhibitionist disorder," which is "where the person repeatedly exposes themselves to a non-consenting person for their own psychological gratification and sexual gratification . . . , sometimes while they're engaging in the act of masturbation, sometimes not"; and (3) an unspecified "paraphiliac disorder," or "sexual deviance," based on his "history of offending against two children." According to Price, (1) Mendoza did not meet the criteria for a pedophilic disorder because there was no evidence he had repeatedly offended against children over a time period of at least six months, and (2) there was "not enough information about [Mendoza's] sexual conduct prior to that offense and prior to coming to prison to go any further on a sexual deviance diagnosis." Further, Price stated (1) "there's two major pathways to having a behavioral abnormality"; (2) "one is sexual deviance and the other is what we call anti-social behavior and attitudes"; (3) "[Mendoza's] is more of the sexual deviance"; and (4) although substance abuse contributes to "lack of volitional control," it "doesn't create any new sexual interest or sexual deviance."

One of the actuarial measures Price used in evaluating Mendoza was the Psychopathy Checklist Revised (PCLR), which contains questions designed to assess whether the subject is "a psychopath who has that anti-social attitude and history of behaviors of a wide variety that

increases the chance of reoffending." Mendoza's score showed he "does not meet the PCLR diagnostic criteria for being a psychopath."

Another actuarial measure Price used was the Static 99-R, which evaluates "risk of reoffending" by "looking at empirical or quantify verified factors that contribute to sexual reoffending." Price testified (1) Mendoza's score of five on that evaluation "puts him in the above average risk category to reoffend"; (2) in a "routine sample" of other sex offenders with a score of five, approximately 15% of those offenders committed another sex offense of any type within five years; (3) in a sample of sex offenders with a score of five who "have already been identified as being high risk and need intervention," 21% reoffended within five years; and (4) in a sample of Texas sex offenders with a score of five, 7.4% reoffended within five years.

Additionally, Price identified and considered (1) "other Non-Static 99 risk factors," including Mendoza's substance abuse, "[p]roblems with employment," impulsivity, "high sex drive," "hypersexualities," "sexual preoccupation," and lack of completion of sex offender treatment; and (2) "protective factors," including "no evidence that [Mendoza] has ever had a male victim" and no "major mental illness" or psychopathy. Also, Price stated it's "a pretty big thing" that Mendoza admits and takes responsibility for his offenses, because "[a] lot of sex offenders don't." Based on his evaluation, Price determined Mendoza has a behavioral abnormality as defined in the Act.

On cross-examination, Price stated (1) although substance abuse can "impair analytical thinking" and "increase impulsivity and acting without thinking," those effects decrease after the substance is out of the user's system, and (2) although Mendoza's exhibitionist disorder diagnosis shows "sexual lack of volitional control," his "exposure offenses" in prison are not considered sexually violent offenses under the Act. Also, Price testified:

> Q. . . .[Y]ou are aware that the standard is the person must be likely to commit a predatory act in the future, correct?

A. I am aware of that.

Q. How does the statute define the term predatory act?

A. The statute defines predatory act as an act directed towards individuals, including family members, for the primary purpose of victimization.

Q. Has that always been the definition of predatory act?

A. No, that was one of the amendments to this law, I believe, that—I don't think it was in the original law. I don't know for sure, though. And I certainly don't know what year it was added if it was added.

Q. Do you put any emphasis on the wording that the act must be for the primary purpose? Do you put any emphasis on the word "primary"?

A. Yeah. Primarily, in this case, in my opinion, means important. It means of chief importance and it's an essential component, fundamental. It does not, in my opinion, first or only purpose. It means that is an important—it's of importance that there is a victim involved in sexual offenses for the offender.

Q. Did the definition, if you recall, used to be that it was for the purpose of—

> [COUNSEL FOR STATE]: Judge, I'm going to object to anything that used to be. We're here—

> THE COURT: Sustained. . . . It's not relevant. What's relevant today is the law that's in effect today, not yesterday or 10 years ago.

. . . .

Q. . . . Do you assign a numerical value to what likely is or isn't?

A. I do not.

Q. But you do conceptualize the term "likely" in order to evaluate an individual?

A. Yes.

Q. How do you conceptualize it?

A. As is the practice in forensic psychology, we not only base our opinions on statutes, but we also utilize case law. In Texas, the case law tells us that in these cases, likely means beyond a mere possibility. That's the way I conceptualize likely for these cases.

On redirect examination, Price testified it is "fair to say that all sex crimes are predatory in nature, particularly those committed against children." Also, he stated the records he reviewed in

conducting Mendoza's evaluation included a prior behavior abnormality evaluation by Dr. Jorge Varela. Price testified:

> Q. And what was Dr. [V]arela's opinion?
>
>> [COUNSEL FOR MENDOZA]: Objection; relevance, hearsay.
>>
>> [COUNSEL FOR STATE]: I'll withdraw the question, Your Honor.
>
> Q. Did you rely on Dr. [V]arela's opinion to form your opinion?
>
> A. No.
>
> Q. Did your opinion agree with Dr. [V]arela's—
>
>> [COUNSEL FOR MENDOZA]: Objection; relevance.
>>
>> THE COURT: Overruled.
>
> A. Yes, my opinion that he has a behavioral abnormality was consistent with Dr. [V]arela's.

Outside the jury's presence, Mendoza made an offer of proof regarding Price's knowledge of the legislature's 2005 addition of the word "primary" to the Act's definition of "predatory act." Price stated he did not know the legislature's purpose in adding the word "primary." Counsel for Mendoza argued "we believe that the question with respect to the primary purpose is relevant in that it was placed in there for a specific reason to be considered by experts and by the jury."

The charge of the court included (1) the Act's definitions of "sexually violent predator," "behavior abnormality," and "predatory act," and (2) a definition of "hearsay." The charge instructed the jury,

> Base your answer only on the evidence admitted in court and on the law that is contained in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.
> . . . You are the sole judges of the credibility of the witnesses and the weight to be given to their testimony, but on matters of law, you must follow the court's instructions.
> . . . If the instructions use a word in a way that is different from its ordinary meaning, use the legal definitions given in this charge.
> . . . .

. . . Hearsay normally is not admissible. In this case, certain hearsay information contained in records reviewed by an expert or experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

Following the verdict and judgment described above, Mendoza filed a timely motion for new trial, which was overruled by operation of law.

## II. Legal and factual sufficiency

In enacting the Act, the Texas Legislature made findings "that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." HEALTH & SAFETY § 841.001. Thus, the legislature found, "a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state." *Id*.

In a suit to commit a person as a sexually violent predator under the Act, the State must prove beyond a reasonable doubt that the person (1) is a "repeat sexually violent offender" and (2) "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. §§ 841.003(a), 841.062(a). A person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id*. § 841.003(b); *see also id*. § 841.002(8) (defining "sexually violent offense"). A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2). Predatory act means "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id*. § 841.002(5).

In reviewing civil commitments under the Act, we use the criminal test for legal sufficiency. *In re Commitment of Brown*, No. 05-16-01178-CV, 2018 WL 947904, at *8 (Tex. App.—Dallas Feb. 20, 2018, no pet.) (mem. op.). Thus, we review all admitted evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the required elements beyond a reasonable doubt. *Id.* It is the factfinder's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id.*

Although factual sufficiency has been abandoned in criminal cases, as an intermediate appellate court with final authority over factual sufficiency challenges in civil cases, we will perform a factual sufficiency review in civil commitment cases when the issue is raised on appeal. *Id.* In our factual sufficiency review, we consider whether the verdict, though supported by legally sufficient evidence, nevertheless reflects a risk of injustice that compels a new trial. *Id.* We view all the evidence in a neutral light and determine whether the jury was rationally justified in finding the required elements beyond a reasonable doubt. *Id.* We reverse only if the risk of an injustice is too great to allow the verdict to stand. *Id.*; *see also In re Commitment of Johnson*, No. 05-17-01171-CV, 2019 WL 364475, at *2 (Tex. App.—Dallas Jan. 30, 2019, no pet.) (mem. op.); *In re Commitment of Stuteville*, 463 S.W.3d 543, 551 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brown*, 2018 WL 947904, at *9.

We begin with Mendoza's second issue, in which he contends the evidence is "legally and factually insufficient to prove beyond a reasonable doubt that [he] suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, where the evidence showed [he] would not commit an act directed toward individuals, including family members, for the primary purpose of victimization." Mendoza asserts (1) the Act's definition of

predatory act "focuses not just on victimization, but requires that victimization be the primary purpose"; (2) he "chose his victims because they were there and female, not because victimizing them was his highest priority"; (3) although "[his] masturbatory habits in prison could be said to involve victimization," "indecent exposure is not a sexually violent offense"; and (4) he "should be granted a new trial where the State must present sufficient proof that he fits this necessary prerequisite to finding him a Sexually Violent Predator."

Mendoza's position has been rejected by several of our sister courts. In *In re Commitment of Sternadel*, appellant Sternadel argued the evidence was legally and factually insufficient to support a sexually violent predator finding because there was "no evidence that he would commit an act directed toward individuals 'for the primary purpose of victimization.'" No. 14-17-00051-CV, 2018 WL 1802151, at *4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2018, no pet.) (mem. op.). The court of appeals noted the supreme court has concluded that "whether a person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence is a single, unified issue." *Id.* (citing *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012)). The court of appeals stated that based on *Bohannan*, it had "expressly rejected the premise that whether an act was performed for the primary purpose of victimization 'is a separate issue from whether he suffers from a behavioral abnormality that predisposes him to commit a sexually violent offense.'" *Id.* (quoting *In re Commitment of Harris*, 541 S.W.3d 322, 328 (Tex. App.—Houston [14th Dist.] 2017, no pet.)). Thus, that court reasoned (1) "[t]hat an act would be 'for the primary purpose of victimization' is not a separate element that must be proved," and (2) to prove that a person "is likely to engage in a predatory act of sexual violence for the primary purpose of victimization," "it is sufficient if the evidence shows the 'person's predisposition to commit a sexually violent offense to the extent that he becomes a menace to the health and safety of another person.'" *Id.* (quoting *Harris*, 541 S.W.3d at 329). The court of appeals

concluded the State was "not required to independently show that the person's predation would be 'for the primary purpose of victimization.'" *Id.*; *see also In re Commitment of Colantuono*, 536 S.W.3d 549, 557 (Tex. App.—San Antonio 2017, no pet.) (same); *In re Commitment of Hayes*, No. 02-18-00018-CV, 2018 WL 4627064, at *3 (Tex. App.—Fort Worth Sept. 27, 2018, no pet.) (mem. op.) (same). Based on the same reasoning, we conclude the State was not required to independently show Mendoza's predation would be for the primary purpose of victimization. Therefore, we overrule his second issue.

Next, we address Mendoza's fourth issue, in which he challenges the legal sufficiency of the evidence. Mendoza argues Price's opinion "amounts to no evidence" and "without [Price's] misleading, conclusory, and speculative testimony, no rational factfinder could have found, beyond a reasonable doubt, the elements required for commitment under the SVP statute." According to Mendoza, (1) Price "misrepresented the status of the law regarding the term 'likely,' misinforming the jury that 'more than a mere possibility' had been adopted by the courts and was the law that the jury must follow, as opposed to merely his opinion of what the term meant"; (2) "[Price's] definition of 'predatory offense' did not come from the statute"; and (3) Price's actuarial tools predicted the likelihood of Mendoza committing "another sexual offense, but not another sexually *violent* offense."

In *In re Commitment of Rollings*, the testifying expert defined "likely" as "more than a mere possibility." No. 05-17-00938-CV, 2018 WL 6695731, at *5 (Tex. App.—Dallas, Dec. 20, 2018, no pet.) (mem. op.). On appeal, Rollings asserted error, suggesting "likely" "must mean at least 'more likely than not.'" This court concluded the expert's definition did not "in and of itself, render the evidence insufficient to support a jury's finding that a person suffers from a behavioral abnormality." *Id.* (citing *In re Commitment of Terry*, No. 09-15-00500-CV, 2016 WL 7323299, at *13 (Tex. App.—Beaumont Dec. 15, 2016, no. pet.) (mem. op.) (concluding expert's working

definition of "likely" as "more than a mere possibility" does not render evidence in sexually violent predator civil commitment case legally or factually insufficient)). Based on *Rollings*, we conclude Price's explanation of how he "conceptualizes" the term "likely" did not render the evidence in this case legally or factually insufficient. *See id*.

As to Mendoza's argument regarding the definition of "predatory offense," the record shows that when Price was asked how he would "describe" that term, he did not use language from the Act. But elsewhere in his testimony, Price defined "predatory act" for the jury using the Act's exact language and testified he derived his definition of "behavioral abnormality" from the Act. We disagree with Mendoza's position that Price's description of "predatory offense" rendered his testimony misleading, conclusory, or speculative. *See In re Commitment of Sawyer*, No. 05-17-00516-CV, 2018 WL 3372924, at *7 (Tex. App.—Dallas July 11, 2018, pet. denied) (mem. op.) (concluding expert's opinion based on standard methodology was not conclusory).

Additionally, as to Mendoza's argument that Price's actuarial tools did not predict the likelihood of Mendoza committing another sexually violent offense, the record shows those tools were not the sole basis for Price's conclusions. *See Rollings*, 2018 WL 6695731, at *6 (rejecting argument that evidence was legally insufficient because actuarial scores did not show another offense would be committed). At trial, the jury heard (1) expert testimony about actuarial tools and other risk factors; (2) the expert's opinion that Mendoza has a behavioral abnormality as defined in the Act; and (3) Mendoza's testimony about his criminal history, the details of his offenses, and his victims. Viewing all the evidence in the light most favorable to the jury's finding, we conclude a rational jury could have concluded beyond a reasonable doubt that Mendoza has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id*. Thus, the evidence is legally sufficient to support the jury's sexually violent predator finding.

In his fifth issue, Mendoza asserts a factual sufficiency challenge. He contends his conviction "cannot stand against a neutral appraisal" because (1) his offenses "were strongly tied to his use of drugs and alcohol and he has not been accused of any violent sexual offenses outside of that context"; (2) "[h]e did not sexually offend until he was almost twenty-one years of age"; (3) his "episodes of exhibitionism" are not "sexually violent" under the Act; and (4) "[a]s disturbing as [his] crimes were, they were not considered so heinous at the time that he was prevented from getting a sentence that was much closer to the minimum of five years than the maximum of ninety-nine years each that he could possibly have received for his crimes." Further, Mendoza asserts that "[w]hile reprehensible, [his] attempted attacks on a single night hardly constitute 'a history of multiple sexual offenses over an extended period of time' or a pattern of well-ingrained offending behavior." (quoting *In re Commitment of Stoddard*, No. 02-17-00364-CV, 2019 WL 2292981 (Tex. App.—Fort Worth May 30, 2019, pet. filed) (mem. op.)).

*Stoddard* involved a sex offender with two aggravated-assault-of-a-child convictions who had also committed other aggravated assaults of children under fourteen. *See* 2019 WL 2292981, at *1. At Stoddard's civil commitment trial, the testifying expert explained that his diagnosis of Stoddard "was centered upon" Stoddard's two offenses for which he had been convicted. *Id*. at *5. The court of appeals concluded the evidence was factually insufficient to support the jury's sexually violent predator finding. That court stated, "To hold that [the expert's] testimony—which by his own admission centered primarily upon the 2003 offenses themselves—provided the necessary evidence to show, beyond a reasonable doubt, that Stoddard should be considered one of the small but extremely dangerous sex offenders for which civil commitments are warranted, would open the door to civil commitment of most—if not all—sex offenders who are currently incarcerated and serving the sentences imposed upon them for their crimes." *Id*. at *16.

Mendoza contends that "unlike Stoddard, who there was found to be insufficient evidence to civilly commit—Mr. Mendoza was not even alleged to have committed other sexually violent offenses." This court recently addressed the same *Stoddard*-based factual insufficiency argument in *In re Commitment of Joiner*, No. 05-18-01001-CV, 2019 WL 4126602, at *9 (Tex. App.—Dallas Aug. 30, 2019, no pet.) (mem. op.). We concluded,

> The statute defines "sexually violent predator," in part, as "a repeat sexual offender." With his two convictions, Joiner is a "repeat sexual offender." To find the evidence factually insufficient because he did not have more than two sexual-assault convictions would constitute adding an element to the sexually violent predator statute, which courts may not do.

*Id*. Likewise, we reject Mendoza's argument that his total of two sexually violent offenses rendered the evidence factually insufficient. *See id*. Further, this court stated in *Joiner* that absent expert testimony to the contrary, the length of an offender's sentences and alleged "lack of heinousness" of the underlying offenses "are not relevant to whether the defendant meets the statutory definition of sexually violent predator." *Id*. The record in this case contains no expert testimony that would make such considerations relevant.

Price testified (1) he diagnosed Mendoza with a substance abuse disorder that was "in partial remission secondary to a controlled environment," "exhibitionist disorder," and an unspecified "sexual deviance" based on his "history of offending against two children"; (2) although substance abuse contributes to "lack of volitional control," it "doesn't create any new sexual interest or sexual deviance"; (3) Mendoza's score of five on the Static 99-R "puts him in the above average risk category to reoffend"; and (4) Mendoza's "other Non-Static 99 risk factors" include substance abuse, "[p]roblems with employment," impulsivity, "high sex drive," "hypersexualities," "sexual preoccupation," and lack of completion of sex offender treatment. Mendoza testified (1) he knows he "needs treatment"; (2) he "just can't stop" exposing himself to women; (3) he has "an anger or temper problem" that "causes me to explode"; and (4) he has no

plans regarding treatment upon his release from prison. The jury was the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Brown*, 2018 WL 947904, at *9. Viewing all the evidence in a neutral light, we conclude (1) the jury was rationally justified in finding beyond a reasonable doubt that Mendoza is "a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence," *see* HEALTH & SAFETY § 841.003(a), and (2) the jury's verdict does not reflect a risk of injustice too great to allow the verdict to stand, *see Brown*, 2018 WL 947904, at *8. Therefore, the evidence is factually sufficient to support the jury's finding that Mendoza is a sexually violent predator. *See Joiner*, 2019 WL 4126602, at *9.

### III. Trial court's evidentiary rulings

We review a trial court's evidentiary rulings for abuse of discretion. *In re Commitment of Browning*, 113 S.W.3d 851, 865 (Tex. App.—Austin 2003, pet. denied). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). Even if a trial court abused its discretion in making an evidentiary ruling, reversal is appropriate only if the error probably resulted in an improper judgment. *Id.*; TEX. R. APP. P. 44.1.

In his first issue, Mendoza contends the trial court erred by admitting into evidence "hearsay testimony regarding a non-testifying expert's opinion . . . where the testifying expert denied that he had relied on the other opinion in forming his own opinion." According to Mendoza, "the prosecution elicited testimony regarding Dr. Varela's conclusions for no other reason than to lend support to its case" and such testimony "was hearsay and not relevant and therefore was unfairly prejudicial to [Mendoza]."

Assuming without deciding the complained-of testimony was hearsay, the jury charge included an instruction that "certain hearsay information contained in records reviewed by an

expert or experts was admitted before you through expert testimony hearsay" and "cannot be considered as evidence to prove the truth of the matter asserted." Absent record evidence to the contrary, we presume the jury followed the trial court's limiting instructions. *In re Commitment of Millar*, No. 05-18-00706-CV, 2019 WL 3162463, at *2 (Tex. App.—Dallas July 16, 2019, no pet.) (mem. op.); *Johnson*, 2019 WL 364475, at *7; *In re Commitment of Day*, 342 S.W.3d 193, 199 (Tex. App.—Beaumont 2011, pet. denied). Mendoza has not directed this court to any record evidence that the jury ignored the trial court's limiting instruction. Therefore, we conclude any error in admitting the complained-of testimony was harmless.

In his third issue, Mendoza asserts the trial court abused its discretion by "prohibit[ing] questioning of the prosecution's expert on his understanding of the legislature's addition of the word 'primary' to the SVP statute's definition of 'predatory act.'" Specifically, Mendoza's complaint pertains to the following portion of Price's cross-examination:

A. The statute defines predatory act as an act directed towards individuals, including family members, for the primary purpose of victimization.

Q. Has that always been the definition of predatory act?

A. No, that was one of the amendments to this law, I believe, that—I don't think it was in the original law. I don't know for sure, though. And I certainly don't know what year it was added if it was added.

Q. Do you put any emphasis on the wording that the act must be for the primary purpose? Do you put any emphasis on the word "primary"?

A. Yeah. Primarily, in this case, in my opinion, means important. It means of chief importance and it's an essential component, fundamental. It does not, in my opinion, first or only purpose. It means that is an important—it's of importance that there is a victim involved in sexual offenses for the offender.

Q. Did the definition, if you recall, used to be that it was for the purpose of—

[COUNSEL FOR STATE]: Judge, I'm going to object to anything that used to be. We're here—

THE COURT: Sustained. . . . It's not relevant. What's relevant today is the law that's in effect today, not yesterday or 10 years ago.

Mendoza argues (1) his attorney "was prevented from asking a follow up question regarding Dr. Price's knowledge that 'primary' was a deliberate addition to the statute and not some sort of oversight on the part of the legislature"; (2) "[w]hether Dr. Price did or did not know why the word was there was a [sic] relevant to his interpretation of its meaning, which was in turn relevant to the credibility of his opinion"; and (3) "[h]ad the jury been permitted to witness the expert's examination on this issue, it likely would have undermined Dr. Price's credibility and resulted in a different verdict."

Immediately prior to the complained-of evidentiary ruling, Price testified he did not "know for sure" whether the legislature had changed the Act's original definition of "predatory act." Also, during the offer of proof, Price stated he did not know the legislature's purpose in adding the word "primary." Therefore, we conclude the trial court did not abuse its discretion by not permitting further questioning about Price's knowledge of the legislature's revisions and intent. *See* TEX. R. EVID. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time . . . ."). Further, for the same reason, any error was harmless. *See U-Haul*, 380 S.W.3d at 132; TEX. R. APP. P. 44.1.

We decide Mendoza's five issues against him and affirm the trial court's judgment.


/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE


181202F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE THE COMMITMENT OF STEVEN
EDWARD MENDOZA

No. 05-18-01202-CV

On Appeal from the 363rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. CV-17-70003.
Opinion delivered by Justice Carlyle.
Justices Pedersen, III and Reichek
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 16th day of October, 2019.