

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00094-CV

IN RE THE COMMITMENT OF JIMMY PONDER

On Appeal from the 276th District Court
Titus County, Texas
Trial Court No. 42321

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

Based on the verdict of a Titus County jury, the trial court civilly committed Jimmy Ponder as a sexually violent predator (SVP) for treatment and supervision as coordinated by the Texas Civil Commitment Office. On appeal, Ponder challenges the factual sufficiency of the evidence supporting the jury's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Because we find that sufficient evidence supports the jury's finding, we will affirm the trial court's judgment.

## I.      Applicable Law

The procedure for the civil commitment of a SVP is contained in Chapter 841 of the Texas Health and Safety Code. "To support a civil commitment order, a judge or a jury must determine that the person is a 'sexually violent predator.'" *In re Commitment of Metcalf*, 602 S.W.3d 609, 613 (Tex. App.—Texarkana 2020, pet. denied) (citing TEX. HEALTH & SAFETY CODE ANN. § 841.062(a)). This determination "requires a finding beyond a reasonable doubt that the person: '(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence.'" *Id.* (citing TEX. HEALTH & SAFETY CODE ANN. § 841.003(a)); *see* TEX. HEALTH & SAFETY CODE ANN. § 841.081(a)). In this case, "[a] person is a repeat sexually violent offender . . . if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses . . . ."[1] TEX. HEALTH & SAFETY CODE ANN. § 841.003(b).

---

[1]The evidence supports, and Ponder does not challenge, that he is a repeat sexually violent offender.

"Behavioral abnormality" is defined as a "congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." TEX. HEALTH & SAFETY CODE ANN. § 841.002(2).

> Boiling it down, a behavioral abnormality is "a . . . condition that . . . predisposes" sexually violent conduct. The modifier, "predisposes[,"] qualifies and describes "condition[."] The required condition *is* the predisposition. The condition has no other qualities, other than that it can be congenital or acquired. The condition and predisposition are one and the same.

*In re Commitment of Bohannan*, 388 S.W.3d 296, 302–03 (Tex. 2012).

In *Bohannan*, the Supreme Court of Texas also concluded that "the import of predisposition and likelihood [to engage in a predatory act of sexual violence] is exactly the same: increased risk. An increased likelihood of misconduct indicates a predisposition, and a predisposition threatens increased likelihood." *Id.* at 303. As a result, "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *Id.* (quoting TEX. HEALTH & SAFETY CODE ANN. § 841.003(a)(2)).

Further, to civilly commit a SVP, "there must be proof of serious difficulty in controlling behavior." *Kansas v. Crane*, 534 U.S. 407, 413 (2002). However, an "'inability to control behavior' will not be demonstrable with mathematical precision." *Id.* "Serious difficulty controlling behavior can be inferred from an individual's past behavior, his own testimony, and the experts' testimony." *In re Commitment of Metcalf*, 602 S.W.3d at 614 (quoting *In re*

3

*Commitment of Washington*, No. 09-11-00658-CV, 2013 WL 2732569, at *6 (Tex. App.—Beaumont June 13, 2013, pet. denied) (mem. op.)).

## II. The Evidence at Trial

Ponder testified that, at the time of trial, he was thirty-two years old and had been in prison since 2015, when he was sentenced to three ten-year terms for two convictions of indecency with a child by contact and one conviction of online solicitation of a minor. He was previously sentenced in 2010 to three years in prison for indecency with a child by exposure. Regarding the 2010 offense, he testified that he was twenty years old at the time and that the victim, Amy,[2] was ten years old.[3] He admitted that he committed the offense and that he pled guilty to it. He also testified that he was ashamed and embarrassed but did not want to talk about it further. Ponder denied that he was sexually attracted to Amy and claimed that he was using a lot of drugs and that it just "seemed like something interesting to do." At the time Ponder committed the offense, he was on bond for delivery of a controlled substance. He testified that he masturbated in front of Amy and asked to see her boobs. She told him to stop, cried, and hid behind a door. He also testified that he did not expect her reaction, that he was scared, that he did not mean to hurt her, and that he told her not to tell anyone. He claimed that, at some point, he knew it was wrong to show his penis to a ten-year-old girl.

Ponder went to prison for his offense against Amy and obtained his GED. While in prison, he also went to sexual-offender treatment (SOT), which he described as just a class that

---

[2]We refer to any person who was a minor at the time an offense was committed by a pseudonym. *See* TEX. R. APP. P. 9.9, 9.10.

[3]Amy was a friend of Ponder's sister.

4

he got credit to attend. After two and one-half years, he went to a halfway house. While living there, he attended Alcoholics Anonymous but did not receive substance-abuse treatment or SOT. He admitted that he violated his parole for being in an undesignated area but denied that he was in a child-safety zone or a park. Rather, he claimed that he was looking for a job four miles away from where he was supposed to be.

He was released from prison on January 7, 2014, and about four days later, he moved in with his parents and a minor relative, Jane. Ponder admitted that he was convicted of sexual offenses against Jane. He admitted that he was serving ten-year sentences that were assessed for indecency with a child by contact against Jane.[4] He also admitted that Jane made an outcry that he had been sexually touching her for over one year, but he claimed that he only touched her twice. He testified that he pled guilty, but nonetheless, he would not admit that he touched her breasts or her vagina, or any other sexual touching, even though she accused him of those acts. He maintained that she was lying and that she was probably mad at him. He again maintained that any sexual touching was a result of his drug use.

Ponder also admitted that he was convicted of online solicitation of a minor, Jane, and said he was high on drugs at the time. He denied that he sent a text message to Jane that stated he would send her a photograph of him getting a "blow job" from someone under eighteen years old. He testified that he did not remember sending text messages to Jane that stated he had taken a photograph of a topless seven-year-old and that he had ejaculated on a little girl's face. However, he acknowledged that he asked Jane if she would show him her breasts and that he

---

[4]Ponder was convicted of two counts of indecency with a child by contact.

5

thought he told her to dress sexy for him. He asserted that he did that because he was high on methamphetamine. He also denied that he was sexually attracted to Jane. Ponder testified that he felt very bad about what he did to Jane and that he no longer had a relationship with her.

Ponder also denied that he had been accused of sexually assaulting another relative, Katie, and denied that he sexually assaulted her. He testified that he was three years older than Katie and that he was fifteen or sixteen when she lived with his family. He denied that he gave her methamphetamine and that he pulled her shirt up above her breasts. He refused to answer when asked about other sexual acts involving Katie. He also denied that he was sexually attracted to Katie.

He claimed that he was high on methamphetamine every time he committed a sexual offense. Ponder explained that it caused him to become quiet, weird, and awkward. He believed that, if he had never done drugs, he would not have committed the sexual offenses. However, because he had been sober for seven years at the time of trial, he did not think he had a problem with drugs. He testified that he had not attended AA or Narcotics Anonymous while in prison and that he had never taken substance-abuse classes. He denied that he needed those classes and maintained that he would refrain from using drugs by completing the SOT program that he had started in January, getting his degree, and thinking about not wanting to go to prison. Ponder denied that he was under the influence of alcohol or marihuana when he committed his offenses and denied that he had a problem with either of those substances.

Ponder denied that he told Dr. Kyle Marcus Clayton that he was only participating in SOT because the parole board made him. He also denied that he told Clayton (1) that he did not

6

need SOT, (2) that he did not want to do it, (3) that there was no value in participating in it, and (4) that it was just something he was required to do to get out of prison. He maintained that Clayton had misunderstood him. He explained that, when he talked to Clayton, he had just started the group therapy part of SOT, which, he claimed, was the part that helped him the most. He explained that group therapy required him to examine what led to his offending and to talk about it. He maintained that he had offended because he was not going anywhere in his life; he was using drugs and alcohol to get as high as he could; and he was worrying about money, getting caught, and getting his fix. He thought that those things caused him to be unable to resist when a bad idea would pop into his head. Ponder acknowledged that he did not want to talk with Clayton about his offenses and that he was agitated and guarded with him.

Ponder maintained that, through group therapy, he had learned what led to his crimes, that his high-risk situation was drug use, how to get away from high-risk situations, and how to recognize his cycles. He denied that he was sexually attracted to young girls, preteen girls, or young teenage girls but admitted that he was a sex offender. Nevertheless, he believed that he was safe to be around children and that there was no risk that he would offend again. He maintained that he had control over his behavior, including his sexual urges.

He also testified that, in prison he received on the job training as a cook and that he was working on an associate degree in business management. He stated that he wanted to work in restaurants when he got out of prison.

Ponder did not agree that he had a behavioral abnormality or that he was likely to commit another sexual offense when he got out of prison. He maintained that he was not interested in

7

that and that he only committed the offenses because he was high. He asserted that he was wiser and more mature and that he was not a menace to others.

Dr. Clayton testified that he met with Ponder and was asked to offer an opinion on whether Ponder had a behavioral abnormality as defined by statute, which he understood to mean a condition that predisposed a person to commit a predatory act of sexual violence. He explained that "a congenital condition is one that [a person] is born with" and that an "acquired condition is just one that develops after [birth]." He also explained that "[e]motional capacity has to do with a person's internal state or mental condition" and that "[v]olitional capacity has to do with a person's behavioral control." At the time of trial, Clayton had performed twenty-four behavioral abnormality evaluations for the State Special Prosecution Unit. He found a behavioral abnormality in twelve of the cases and did not find an abnormality in the other twelve.

Dr. Clayton testified that the behavioral abnormality evaluation he performs consists of three parts. First, he reviews all available records provided to him, including offense reports, prison records, medical records, and any prior evaluations of the person. Next, he meets with the individual and interviews them to obtain their history, a detailed sexual history, sexual offending history, and criminal history. He then performs an assessment of various risk instruments relevant to sexual reoffending. This includes rating the instruments based on the records and the interview and scoring the instruments. Clayton utilized three different tests: the Hare Psychopathy Checklist-Revised (PCLR), the Risk for Sexual Violence Protocol (RSVP), and the STATIC-99R.

8

Dr. Clayton testified that the RSVP and STATIC-99R are particularly sexual offense risk instruments. Risk factors are things, based on peer-reviewed research, that increase the likelihood of someone offending in the future. The two biggest risk factor categories are sexual deviance and antisociality. Clayton testified that, when performing a sexual offender risk assessment, he assesses all risk factors that may or may not be present and the weight of those factors. Because some risk factors are more directly related to predicting sexual reoffending and have been shown to be stronger predictors of reoffending, they are weighted more heavily than others. These include sexual deviance, repeated sexual offenses even after detection, sexual offenses post unsuccessful treatment, and a variety or diverse types of sexual offenses.

Dr. Clayton testified that sexual deviance broadly is an abnormal problematic sexual interest or behaviors, also known as paraphilia. It is relevant to a behavioral abnormality because it makes a person more likely to reoffend, and it does not typically go away. He found Ponder to be sexually deviant.

In this case, Dr. Clayton reviewed Ponder's offense-related materials from his prior offenses, his prison records, his medical and psychological records, records from Ponder's previous evaluation, and the depositions of Ponder and Clayton. Dr. Clayton explained that historical information is important in determining a person's presentation and their pattern of behavior because their past behavior is a predictor of their future behavior. Consequently, a person's history is important to understanding them in the present and in estimating any future risk. He testified that the details of Ponder's adjudicated offenses were significant in his determination that Ponder had a behavioral abnormality because they provided information about

his sexual interests and behavior, they showed his pattern of behaviors that indicated he may have a condition that would make him likely to reoffend, and they were relevant to his risk to reoffend.

Dr. Clayton's review of Ponder's records showed that his first victim was Jane's friend, Amy, who was staying at their house. He testified that the records showed that Amy was ten years old and that Ponder was twenty. Ponder went into the room where Amy was sleeping, woke her up, exposed himself, and masturbated. He offered her money to look at his penis, which she refused to do, and then offered her money to pull up her shirt, which she also refused to do. Clayton considered that behavior sexually deviant because it involved a prepubescent child who was unable to give consent. He also noted that those offenders with a non-familial victim and a non-contact sexual offense tend to reoffend at a higher rate. Although Ponder's first offense was not a sexually violent offense under the statute, Clayton testified that it was relevant in the determination of whether Ponder had a sexually deviant condition and to his risk of reoffending.

Dr. Clayton noted that, while in prison, Ponder obtained his GED and participated in a four-month SOT, which was not a full SOT. Ponder was also required to participate in an SOT when he went on parole. However, he was not successful on parole because he had multiple instances of being in or near a restricted area, including a park where children could congregate. The parole board revoked Ponder's parole and sent him back to prison. Clayton also testified that parole revocation is a risk factor associated with a higher risk to reoffend.

Ponder's next victim was his relative, Jane. His offenses against her occurred over the period when she was fourteen to sixteen years old and began about one week after he was released from prison. Dr. Clayton found that concerning because Ponder had already been punished for a sexual offense and had participated in SOT, yet he reoffended in a short period of time when he had the opportunity. He testified that Jane alleged that there were multiple instances where Ponder (1) fondled her breasts and her buttocks, (2) touched her vagina, (3) solicited sex from her, (4) talked to her about wanting to see her topless, and (5) asked her to show him her breasts. She also alleged that Ponder spoke to her about having received oral sex from a minor, told her that he had taken a photo of a seven-year-old girl without a top on, and told her that he had ejaculated on a young girl's face and had a photo of it. Jane said that the offenses against her happened weekly for about one year.

When Dr. Clayton asked Ponder about those offenses, Ponder told him he did not want to discuss the details but admitted that he had sexual contact with Jane one or two times and that, on one occasion, he sent her a text message and asked to see her breasts. Ponder claimed that the other text messages were just him talking and were not true. Based on that conversation, Clayton considered Ponder to be minimizing or denying his sexual offenses against Jane. He noted that, although minimization is not uncommon, it is a risk factor that can be a hindrance or obstacle to how much a person can benefit from treatment and to how engaged they are with gaining insight and rectifying some of the issues that lead to the likelihood or reoffending. Clayton also testified that reoffending after detection and conviction is another risk factor. He explained that most individuals who have a sexual offense, after they are detected, charged, and convicted, do not

11

reoffend. But reoffending after detection is a significant risk factor. Clayton found the extent to which Ponder engaged in or talked about having sexual interests or sexual behaviors involving children notable, because it showed Ponder's preoccupation with children.

Dr. Clayton also reviewed records in which Ponder was accused of other unadjudicated sexual offenses. One police report he reviewed involved Katie. The offenses occurred in 2007 and 2008, when Katie was thirteen to fourteen years old and Ponder was seventeen to eighteen years old. Katie reported that Ponder repeatedly fondled her breasts, exposed himself, masturbated in front of her, and solicited sex from her. She also said that, on one occasion, Ponder removed her clothes while she was asleep. Ponder denied those accusations. Clayton found those records significant because the victim was young, the acts were nonconsensual, and the acts involved both contact and noncontact behavior. That fit with Ponder's pattern of sexual interests and behaviors involving children and was consistent with his adjudicated offenses.

Dr. Clayton also testified that there was an outcry by Jane's babysitter, Jackie, who was twelve or thirteen at the time. According to Jackie, Ponder exposed himself, masturbated in front of her, solicited sex from her, and digitally penetrated her vagina. Clayton testified that that fit Ponder's pattern of offending against someone much younger using nonconsensual acts and involving both contact and noncontact behavior. He noted that a sexual offense against a child is considered a violent act against the child.

Dr. Clayton testified that he met with Ponder in January but that Ponder refused to participate. He met with him a second time in June for three hours. He described Ponder as "pretty guarded" and agitated about the evaluation and stated that, at times, Ponder minimized

12

certain negative aspects of his history or did not want to discuss certain aspects of his history. At the end of the interview, Ponder told him that he did not feel that he had done a very good job with the evaluation, and Clayton gave him an opportunity to provide more information.

Ponder told Dr. Clayton that, at one point, he had an alcohol problem and that, at another point, he was addicted to methamphetamine and marihuana. Ponder also told him that he continued to crave methamphetamine and wanted to use it but maintained that he would not because he did not want to go back to prison. Clayton diagnosed Ponder with use disorders involving three substances: cannabis, alcohol, and methamphetamine. Nevertheless, Ponder told Clayton that he did not believe he needed substance-abuse treatment. Clayton opined that that indicated that Ponder did not have an adequate understanding of his potentially problematic or risky behavior, particularly because Ponder said that he was using methamphetamine during his sexual offenses. He explained that a person with a history of substance use occurring during a sexual offense is at a higher risk of reoffending, particularly when the substance-use issue is not being addressed in treatment. He also explained that, although substance use aggravates the likelihood of reoffending, drugs and alcohol do not cause a person to sexually offend.

Dr. Clayton also opined that, if Ponder blamed methamphetamine for his sexual offending, then he did not understand his problem. He explained that, if Ponder assigned all of his behavior to methamphetamine, he failed to recognize that he might also have a sexual issue that needed to be addressed in treatment. Clayton opined that, even if Ponder never used methamphetamine again, he was still at risk to sexually reoffend. Also, Clayton opined that a

13

person with a history of chronic substance use disorder who is not in treatment has a higher risk of relapse than one in treatment.

Dr. Clayton testified that multiple convictions, multiple victims, and multiple times of offending after previously being charged and convicted are all considered significant risk factors in predicting whether someone is going to reoffend in the future. In addition, a diversity of offending, that is, more than one specific type of activity or target so that there is an increase in potential victims, also increases the likelihood of reoffending in the future. Also, where there is an escalation, such as beginning with exposure and ending with sexual contact, or an increase in the frequency of offending suggests that the person is at a higher risk of reoffending. Other risk factors that Clayton noted in Ponder included that (1) he reoffended multiple times over a long period of time, (2) he minimized his behavior, (3) he had inappropriate thoughts and objectivized his victims, and (4) he psychologically coerced them by offering them money and telling them not to tell anyone.

Dr. Clayton diagnosed Ponder with paraphilic disorder, with pedophilic exhibitionistic and nonconsensual sexual features. He explained that a paraphilic disorder is where there is a pattern of sexually deviant interests and behaviors and that is specified by several different types of behaviors. In Ponder's case, there was evidence of sexual interests and behaviors with prepubescent children, which would be the paraphilic interest, there were indications of exhibitionism in exposing himself for sexual gratification, and there was a pattern of sexual interests and behavior with nonconsenting partners. He also explained that a paraphilic disorder is a congenital or acquired condition that can affect a person's emotional or volitional capacity

14

and can predispose a person to commit a predatory act of sexual violence. Clayton acknowledged that his inclusion of pedophilic features in his diagnosis was due to Amy's age. He also acknowledged that he did not diagnose Ponder with pedophilic disorder.

Dr. Clayton opined that Ponder's sexual offenses were indicators that his emotional and volitional capacity had been affected. He pointed to his repeated multiple and different types of sexual offenses that, despite punishment and treatment, had continued to persist over time. He opined that that suggested Ponder had certain sexual interests, that he was predisposed to act on those interests, and that he had a difficult time controlling his behavior towards those interests. Clayton also testified that such a condition does not just go away.

In addition to reviewing the relevant records and interviewing him, Dr. Clayton scored Ponder on the PCLR, the RSVP, and the STATIC-R99. He testified that the PCLR measures psychopathic traits, the STATIC-R99 is an actuarial list assessment, and the RSVP is a non-actuarial list assessment. Clayton explained that, although psychopathy is not the same as behavioral abnormality, there is an association between how high someone scores on psychopathy and how likely they are to engage in problematic, destructive, and violent behaviors. Ponder scored nineteen on the PCLR, which was a moderate level of psychopathic traits and slightly lower than the average inmate. Clayton acknowledged that that score was lower than sixty-five percent of all inmates and that Ponder was not classified as a psychopath. He noted that that was a positive factor for Ponder. Clayton also testified that that would not be considered a risk factor in Ponder's situation, but that a person does not have to be a psychopath to have a behavioral abnormality.

15

Dr. Clayton explained that an actuarial assessment, such as the STATIC-R99, looks at factors that are known to predict sexual offending and rates the person based on those factors. The person gets put into a category, and then an estimate of the likelihood of reoffending based on that category is scored. He testified that the STATIC-R99 is the best actuarial measurement for predicting sexual reoffending but cautioned that it only considers one set of risk factors. So, to determine whether a person has a condition that makes them likely to reoffend, it is important to consider other risk factors and all the available information.

Dr. Clayton testified that Ponder scored a six on the STATIC-R99, which placed him in the highest risk category and well above the average sexual offender. He explained that the scores range from negative three to twelve and that the average for a sexual offender is two. The STATIC-R99 identified additional risk factors applicable to Ponder, including his young age, the absence of live-in romantic relationships lasting two or more years, multiple victims and convictions, and four or more prior sentencing dates. Each of those have been linked to a higher risk of reoffending.

Dr. Clayton also testified that, while in prison for his first sexual offense, Ponder received a score of four on the STATIC-R99, which placed him in a lower risk category. Nevertheless, even after he received seven to eight months of SOT, Ponder reoffended multiple times afterward. Clayton agreed that Ponder's then-current score placed him in the well above average range, or at high risk, of reoffending.

Dr. Clayton explained that the RSVP has a list of known risk factors that are each assessed whether present or not and that, based on the assessment of all the factors, the person is

16

placed in either a low, moderate, or high-risk category. Ponder was positive for problems with intimate relationships based on his self-report of infidelity, drug use, and conflicts during the relationships. Clayton also found Ponder positive for problems with non-intimate relationships based on his self-report of lack of social support, lack of contact with his family for years, and no close, long-term, positive friendships. Because Ponder failed to identify his sexual offenses as sexual problems, denied his need for treatment, denied that he was a risk to others, and asserted that he was safe around children, Clayton found Ponder positive for problems with self-awareness. Also, because of Ponder's significant history of impulsive problematic behaviors, Clayton found him positive for problems with stress or coping. Overall, Clayton placed Ponder in the moderate to high range, which was above average. He also noted that Ponder did not have any identified protective factors, which if present, would reduce his risk of reoffending.

Dr. Clayton testified that he identified some positive factors for Ponder and explained that a positive factor is not independently predictive of lowering risk but is positive in terms of risk management. Clayton testified that Ponder's obtaining a GED, his job skills and employment history, his lack of mental illness and lack of a high degree of psychopathy, and his then-current participation in SOT were all positive factors.

Dr. Clayton also testified that, although participation in SOT is positive, the risk of reoffending is not reduced until a person has successfully completed a treatment program. He was concerned about Ponder because when he interviewed him, after he had been in his then-current SOT for five months, Ponder could not tell him what he had learned in his prior SOT and said that he did not need his then-current SOT. Based on Ponder's trial testimony, Clayton was

17

also concerned that Ponder had a limited understanding of his problematic issues and his high-risk situations. He opined that use of methamphetamine was problematic for Ponder but that his highest risk situation was being around children and the opportunity to reoffend against children. In Clayton's opinion, Ponder needed more treatment.

According to Dr. Clayton, Ponder's biggest risk factors were his sexual deviancy and his persistent and repeated acting out, sexually, with multiple victims on multiple occasions over several years, with both contact and non-contact offenses. He noted that, as an adult, Ponder had sexually offended the majority of the time that he had been free. Clayton opined that that showed that Ponder has a persistent predilection for sexual offending and that he was at a high risk to reoffend. He explained that Ponder's conditions tended to persist without significant treatment and that, even if Ponder completed his then-current SOT, his risk would still be elevated. Ponder's completion of the SOT would not change Clayton's opinion. He also opined that Ponder suffered from a behavioral abnormality that made him likely to engage in a predatory act of sexual violence.

On cross-examination, Dr. Clayton acknowledged that it was possible that Ponder's progress in treatment could affect his opinion about whether Ponder had a behavioral abnormality and his risk of reoffending. He also testified that, after five years, 17.6 percent of those who scored a six on the STATIC-R99 had been recharged or reconvicted for a sexual offense and that, after ten years, twenty-five percent of those who scored a six had been recharged or reconvicted for a sexual offense. He also testified that, in Texas, the rate was 10.2 percent after five years. However, he later testified that those percentages only look at

18

reconvictions and do not account for offending and not being caught or detected. Clayton testified that research suggests that as high as seventy-five or eighty percent of offenses are not detected. He also acknowledged that Ponder had reoffended multiple times after he was scored a four on the STATIC-R99, even though the reconviction rate after five years would have been less than 10.2 percent.

## III. Sufficient Evidence Supports the Jury's Finding

### A. Standard of Review

Although the commitment of a person as a SVP is a civil proceeding, the burden of proof is beyond a reasonable doubt. *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020); *see* TEX. HEALTH & SAFETY CODE ANN. § 841.062(a) (Supp.). In a challenge to the factual sufficiency of the evidence to support a finding, we consider the entire record and "determine whether. . . a reasonable fact[-]finder could find beyond a reasonable doubt that the defendant is an SVP." *In re Commitment of Stoddard*, 619 S.W.3d at 668. We "may not usurp the jury's role of determining the credibility of witnesses and the weight to be given their testimony," and we "presume that the fact[-]finder resolved disputed evidence in favor of the finding if a reasonable fact[-]finder could do so." *Id.* We will find the evidence factually insufficient if, "in light of the entire record," we determine that "the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the SVP finding, along with the undisputed facts that do not support the finding, is so significant that the fact[-]finder could not have found beyond a reasonable doubt that the statutory elements were met." *Id.* at 675 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

19

**B.     Analysis**

Ponder only challenges the factual sufficiency of the evidence supporting the jury's finding that he is a SVP. Ponder points to the following undisputed facts that do not support the finding: (1) Dr. Clayton did not diagnose Ponder with pedophilic disorder and (2) Ponder scored lower than sixty-five percent of all inmates, and in the fifty-first percentile for antisocial behavior, on the PCLR. These facts do not render the evidence factually insufficient.

Ponder provides no authority to support his position that the failure to diagnose Ponder with pedophilic disorder renders the evidence insufficient to support the jury's finding. At trial, Dr. Clayton readily acknowledged that he did not diagnose Ponder with pedophilic disorder, although he did diagnose him with paraphilic disorder with pedophilic exhibitionistic and nonconsensual features. Ponder did not explore the significance of the differences between the two diagnoses at trial. On appeal, he does not offer any explanation of how the lack of a pedophilic disorder diagnosis renders the evidence insufficient to support the jury's finding.

Ponder also provides no authority to support his position that a score lower than sixty-five percent of all inmates and in the fifty-first percentile for antisocial behavior on the PCLR renders the evidence insufficient to support the jury's findings. As Dr. Clayton testified at trial, Ponder's scores on the PCLR indicated that he is not a psychopath and that this would not be a risk factor in this case. But he also testified that a person does not have to be a psychopath to have a behavioral abnormality. This testimony was not disputed at trial.

The jury also heard evidence (1) that, after Ponder was an adult, he committed multiple sexual offenses, both non-contact and contact, against adolescent and teenage girls, (2) that, after

20

serving several years in prison and receiving SOT, he began sexually offending against Jane within one week of his release, (3) that he continued to commit sexual offenses against Jane on multiple occasions for at least one year, and (4) that, during that time, he fantasized about and may have committed sexual offenses against another young girl. Dr. Clayton also testified about Ponder's results on the RSVP and STATIC-R99, two tests shown to be reliable in predicting the likelihood of sexual reoffending, in which he was categorized as above average and well above average, or high risk, for sexually reoffending. Clayton also testified that, although Ponder admitted to the sexual offenses for which he was convicted, he denied any other offenses. Ponder also told him that, in the past, he had problems with alcohol and was addicted to methamphetamine and marihuana.

Ponder also admitted to methamphetamine addiction at trial and attributed his sexual offenses to his use of that drug. Nevertheless, Ponder had not sought any substance-abuse treatment and testified that he did not need it. Further, although Ponder testified that he had been in SOT for eight months at the time of trial and had made significant progress in understanding his offenses, Dr. Clayton testified that Ponder told him a few months earlier that he did not need SOT and that he was only participating in it because it was required by the parole board. Ponder disputed this, but the evidence showed that he had been in prison for almost seven years before he began SOT.

Dr. Clayton diagnosed Ponder with a paraphilic disorder, which is a pattern of sexually deviant interests and behaviors. Ponder manifested that disorder in sexual interests and behaviors with prepubescent children. He also explained that a paraphilic disorder, which will

not go away, is a congenital or acquired condition that can affect a person's emotional or volitional capacity and can predispose a person to commit a predatory act of sexual violence. He pointed to the persistence of Ponder's offenses over time with young, teenage girls as evidence that Ponder's paraphilic disorder had affected his emotional and volitional capacity such that he had a difficult time controlling his behavior towards those interests.

Since "[t]he jury may resolve conflicts and contradictions in the evidence by believing all, part, or none of the witnesses' testimony," it was free to believe Dr. Clayton's testimony and to disbelieve Ponder's trial testimony. *In re Commitment of Metcalf*, 602 S.W.3d at 619 (alteration in original) (citing *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.— Beaumont 2002, pet. denied)). Based on this evidence, a rational jury could find beyond a reasonable doubt that Ponder is a SVP.

Further, the Texas Supreme Court has held that, "[i]n SVP commitment proceedings, the only fact issue to be resolved by the trier-of-fact is whether a person has the behavioral abnormality required for an SVP." *In re Commitment of Bohannan*, 388 S.W.3d at 305. For that reason, "[a] medical diagnosis of a person's mental health may certainly inform an assessment of whether he has an SVP's behavioral abnormality, but the principal issue in a commitment proceeding is not a person's mental health but whether he is predisposed to sexually violent conduct." *Id.* at 306.

Because of the abundant evidence in support of the jury's finding, we find that the lack of a pedophilic disorder diagnosis and the evidence of Ponder's average and below average scores on the PCLR are not so significant that a rational jury could not have found beyond a reasonable

22

doubt that the statutory elements were met. *See In re Commitment of Stoddard*, 619 S.W.3d at 674; *In re Commitment of Jackson*, No. 02-21-00275-CV, 2022 WL 3097373, at *7–8 (Tex. App.—Fort Worth Aug. 4, 2022, no pet.) (mem. op.); *In re Commitment of Hutyra*, No. 14-17-00669-CV, 2018 WL 3911136, at *6 (Tex. App.—Houston [14th Dist.] Aug. 16, 2018, pet. denied) (mem. op.).

Ponder also challenges the bases of Dr. Clayton's opinion that Ponder has a behavioral abnormality that affects his emotional or volitional capacity, that his paraphilic condition will not go away, and that Ponder requires additional treatment. Ponder argues that Clayton did not re-interview him shortly before trial and that, had he done so, he may have changed his opinion.

"Serious difficulty controlling behavior can be inferred from an individual's past behavior, his own testimony, and the experts' testimony." *In re Commitment of Metcalf*, 602 S.W.3d at 614 (quoting *In re Commitment of Washington*, No. 09-11-00658-CV, 2013 WL 2732569, at *6 (Tex. App.—Beaumont June 13, 2013, pet. denied) (mem. op.)). Clayton acknowledged that his opinion might change if Ponder successfully completed his SOT. The jury was able to weigh this testimony, as well as the rest of the evidence at trial. From the evidence of Ponder's past behavior, Ponder's trial testimony, and Dr. Clayton's testimony, as set forth above, the jury could reasonably infer that Ponder had serious difficulty in controlling his behavior. We presume that the jury resolved any conflicts in the evidence in favor of its finding that Ponder is a SVP, and, in light of the entire record, we find that a reasonable fact-finder could do so.

23

## IV. Disposition

Because factually sufficient evidence supported the jury's finding that Ponder is a SVP, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:    May 11, 2023
Date Decided:      June 6, 2023